# EXHIBIT 3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-1720
————
TEL: (312) 407-0700
s
www.skadden.com

DIRECT DIAL
(312) 407-0954
DIRECT FAX
(312) 827-9387
EMAIL ADDRESS
MARCIE.LAPE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—————
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

October 23, 2023

**BY E-MAIL**

| | |
|---|---|
| Norman E. Siegel | John A. Yanchunis |
| Barrett J. Vahle | Patrick Barthle |
| Jordan A. Kane | Morgan & Morgan Complex Litigation |
| Stueve Siegel Hanson LLP | Group |
| 460 Nichols Rd., Ste. 200 | One Tampa City Center |
| Kansas City, MO 64112 | 201 North Franklin Street, 7th Floor |
| siegel@stuevesiegel.com | Tampa, FL 33602 |
| vahle@stuevesiegel.com | jyanchunis@forthepeople.com |
| kane@stuevesiegel.com | pbarthle@forthepeople.com |

          RE:    *In re Flagstar December 2021 Data Security Incident Litigation*, Case No. 4:22-cv-11385

Dear Counsel:

      I am writing in response to Ms. Kane's emails dated October 12 and 18, 2023, regarding questions and follow-up items following the parties' meet and confer on October 11 and Flagstar's October productions.

**Follow-up questions relating to Flagstar's October 16 production**

1.      The production appears to include threat actor communications and a Tetra Defense invoice. Will you confirm whether any threat actor communications remain outstanding?

October 23, 2023
Page 2

No threat actor communications remain outstanding.

**2.** **When does Flagstar anticipate producing: (1) documents Bill Hardin considered for his declaration that were not otherwise provided by Flagstar/Flagstar's counsel; (2) documents sufficient to identify the identities of Tetra Defense, Inc. folks involved in the data retrieval/deletion; and (3) documents regarding Kroll's dark web monitoring?**

We anticipate producing the remaining documents that Mr. Hardin considered in forming the opinions expressed in the Hardin Declaration later this week.

Flagstar has produced a document (FLAG-DEC-00000104) that identifies the individuals at Tetra Defense, Inc. generally involved in the Flagstar engagement. Flagstar will also produce a privileged document in redacted form that identifies the specific individual at Tetra Defense who communicated with Flagstar regarding the data retrieval/deletion.

Flagstar has completed its search and has not identified any additional non-privileged documents regarding dark web monitoring relating to the data breach that have not already been produced.

**3.** **I see that FLAG-DEC-00000121 is a "Document Withheld for Privilege." Can you provide context for this?**

This is a document prepared by Flagstar's counsel concerning unrelated pending litigation. It is protected by the attorney-client privilege and work product doctrine, and those privileges were not intentionally waived by Flagstar.

**Status update on Flagstar's efforts to:**

**1.** **Provide dates for the depositions of Ms. Charters, Mr. Hardin, and a 30(b)(6)**

Mr. Hardin is available on November 16 for a deposition. Please let us know if that date works for you.

Flagstar has objected to producing a 30(b)(6) witness, and Flagstar will not agree to produce Ms. Charters unless the parties can agree on the appropriate scope of the deposition.

October 23, 2023
Page 3

2. **Identify the bates-numbers relevant to each category of documents Flagstar has agreed to produce**

   See attached chart identifying this information.

3. **Confirm whether Ms. Charters and/or Mr. Hardin considered privileged documents in preparing their opinions/declarations**

   Ms. Charters was provided with a draft of the motion to dismiss. No other privileged documents were considered by Ms. Charters or Mr. Hardin in preparing their declarations.

4. **Identify documents sufficient to determine the start/end dates of Kroll's forensic inspection (*see* Request No. 16)**

   The Kroll Statement of Work was signed on December 3, 2021, and Kroll's forensic investigation (Phase 1 of the SOW) began at that time. As best as Flagstar can determine, Kroll's forensic investigation was completed on or around January 25, 2022, though Kroll continued to work on sensitive data detection and review (Phase 2 of the SOW) after that date.

**Additional documents requested by Plaintiffs on October 18 email**

1. **The list of stolen files sent to Flagstar by the threat actor on 12/13/2021 at 5:59pm after Flagstar's initial email communication (see FLAG-DEC-00000019)**

   The list of stolen files or other documents sent by the threat actor are not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Nevertheless, we have undertaken a search for such documents and have been unable to locate them. Flagstar notes that the communications with the threat actor were conducted by Flagstar's ransom negotiator, Tetra Defense, Inc., not Flagstar.

2. **The "files.zip" folder sent by the threat actor on 12/14/2021 at 4:11pm and/or 4:14pm (see FLAG-DEC-00000020-21)**

   See response to number 1 above.

3. **The "screen.zip" folder sent by the threat actor on 12/17/2021 at 5:57pm (see FLAG-DEC-00000022)**

October 23, 2023
Page 4

See response to number 1 above.

4. **The "new announcement" sent by the threat actor on 12/22/2021 at 8:04pm (see FLAG-DEC-00000026)**

See response to number 1 above.

5. **The "proof.png" the threat actor sent to Flagstar on 12/28/2021 (see FLAG-DEC-00000030)**

See response to number 1 above.

6. **Any additional emails with AXA AL Insurance related to Flagstar's ransom negotiations or reimbursement request, including transmission of the Tetra invoice (see FLAG-DEC-00000001)**

Flagstar produced its reimbursement request to AXA XL to establish that Flagstar paid a ransom to the threat actor. Flagstar's communications with its insurance carrier are otherwise not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Flagstar further objects to the extent that this calls for the production of documents covered by the common interest privilege, work-product protection, or any other applicable privilege.

7. **CRA's "draft written report" (see FLAG-DEC-00000068)**

CRA's draft reports are covered by the work-product protection. *See* Fed. R. Civ. Proc. 26(b)(4)(B).

8. **Flagstar's "letter of engagement" with Kroll dated Dec. 3, 2021, mentioned in Kroll's Statement of Work (see FLAG-DEC-00000089)**

Flagstar will produce the "letter of engagement" with Kroll dated Dec. 3, 2021.

9. **The "timeline of events relating to the security incident" mentioned in Kroll's Statement of Work (see FLAG-DEC-00000089)**

A timeline of events relating to the security incident is not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Flagstar further objects to the extent this calls for the production of documents protected by the attorney-client privilege, work-product protection, or any other applicable privilege.

October 23, 2023
Page 5

10. **The "timeline of events associated with the ransomware incident" mentioned in Kroll's Statement of Work  (see FLAG-DEC-00000089)**

A "timeline of events associated with the ransomware incident" is not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Flagstar further objects to the extent this calls for the production of documents protected by the attorney-client privilege, work-product protection, or any other applicable privilege.

11. **The "Client-documented timeline of analysis and events" mentioned in Kroll's Statement of Work (see FLAG-DEC-00000089)**

A "Client-documented timeline of analysis and events" is not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Flagstar further objects to the extent this calls for the production of documents protected by the attorney-client privilege, work-product protection, or any other applicable privilege.

12. **Any "written report" contemplated by Kroll's Statement of Work (see FLAG-DEC-00000089)**

Any "written report" by Kroll is not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss. Flagstar further objects to the extent this calls for the production of documents protected by the attorney-client privilege, work-product protection, or any other applicable privilege.

13. **Any previous or subsequent Statements of Work for Kroll relating to the data breach (see FLAG-DEC-00000089)**

The December 3, 2021 Statement of Work ("SOW") is the only SOW with Kroll relating to its forensic investigation of the data breach. There is a separate SOW for Kroll for the notification and credit monitoring services offered to impacted individuals, but that SOW is not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss.

14. **Kroll's invoices**

Kroll's invoices are not relevant to the factual challenge to Article III standing made by Flagstar in its Motion to Dismiss.

October 23, 2023
Page 6

**15.     Tetra's Defense, Inc.'s invoices (I see you provided an invoice through 12/31/2021 – please produce any others covering work performed after that date)**

Flagstar will produce other Tetra invoices that are in its possession, custody, or control.

**16.     Any report provided by Tetra Defense, Inc. (*see* FLAG-DEC-00000099)**

Tetra Defense did not provide any report.

Sincerely,

*/s/ Marcie Lape*

Marcie Lape

Enclosure

| Document Categories | Bates Numbers |
|---|---|
| Excerpts from lists sufficient to show the data elements compromised for each of the named Plaintiffs in the Data Breach and Accellion Incident | FLAG-DEC-00000087 to FLAG-DEC-00000088 |
| Non-privileged documents considered by Jennifer Charters in preparing the Charters Declaration. | FLAG-DEC-00000087 to FLAG-DEC-00000088 |
| Communications with the Threat Actor | FLAG-DEC-00000016 to FLAG-DEC-00000035  FLAG-DEC-00000103  FLAG-DEC-00000108 to FLAG-DEC-00000123 |
| Documents sufficient to show that Flagstar paid a ransom to the Threat Actor | FLAG-DEC-00000001 to FLAG-DEC-00000015  FLAG-DEC- |
| Engagement letter with Tetra Defense, Inc. | FLAG-DEC-00000093 to FLAG-DEC-00000102 |
| Non-privileged documents sufficient to show that Flagstar's cyber experts erased the drive on which the Flagstar data was stored and any non-privileged documents, to the extent | FLAG-DEC-00000016 to FLAG-DEC-00000018 |

October 23, 2023
Page 8

| | |
|---|---|
| they exist, sufficient to show the identity of the persons involved in the deletion of data. | FLAG-DEC-00000104 to FLAG-DEC-00000107 |
| Statement of Work with Kroll Associates, Inc. dated December 3, 2021 | FLAG-DEC-00000089 to FLAG-DEC-00000092 |
| Non-privileged documents concerning dark web monitoring related to the Data Breach | FLAG-DEC-00000054 to FLAG-DEC-00000055<br><br>FLAG-DEC-00000104 to FLAG-DEC-00000107 |
| Non-privileged documents considered by Mr. Hardin in forming the opinions expressed in the Hardin Declaration | FLAG-DEC-00000036 to FLAG-DEC-00000056 |
| Documents sufficient to show compensation received by Mr. Hardin and/or CRA concerning the Action and/or Data Breach | FLAG-DEC-00000057 to FLAG-DEC-00000072 |
| Engagement letter executed on October 28, 2022, between Skadden and CRA. | FLAG-DEC-00000073 to FLAG-DEC-00000086 |